IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Jury Trial Requested |
| THE CITY OF NORTH LAS VEGAS, NEVADA, | ) |
| | ) |
| | ) |
| | ) CIVIL ACTION NO. |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT

NOW COMES Plaintiff, United States of America, and respectfully alleges, upon information and belief:

1.    This action is brought by the United States against the City of North Las Vegas, Nevada (hereinafter the "City" or "Defendant"), to enforce title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, 29 C.F.R. pt.1630.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction of the action under 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1345.  This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117.

3.    Venue is appropriate pursuant to 28 U.S.C. § 1391 because the Defendant is located in Nevada and all of the events or omissions giving rise to the claims occurred in Nevada.

PARTIES

4.    Defendant's Parks and Recreation Department is an agency created under the laws of the
City of North Las Vegas, Nevada.

5.    Defendant is a person within the meaning of 42 U.S.C. § 12111(7) and 42 U.S.C.
§ 2000e(a).

6.    Defendant is an employer within the meaning of 42 U.S.C. §§ 12111(5) and a covered
entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2.

FACTS

7.    Joseph Dixon is an individual with a disability within the meaning of 42 U.S.C. § 12102
and 29 C.F.R. § 1630.2.  Mr. Dixon has a permanent, uncorrected visual acuity of 20/1000 in his
left eye.  His left eye is correctable only to 20/400.  As a result, he is substantially limited in the
major life activity of seeing.

8.    Mr. Dixon was hired by the Defendant as a Parks Maintenance Crew Member ("Crew
Member") in April of 1981.  In 2000, after nearly twenty years as a Crew Member, Mr. Dixon
was promoted to a Supervising Maintenance Worker, a job which in 2002 was re-titled, but
without a change in essential job functions, to Parks Maintenance Crew Leader ("Crew Leader").

9.    At the time of his promotion, the only required driving certification for the Supervising
Maintenance Worker was a standard driver's license (Nevada Class "C"), which Mr. Dixon
possessed.

10.    The position of Supervising Maintenance Worker and/or Crew Leader involves
supervising, working with, and delegating tasks to Crew Members, including the operation of
various Parks Department vehicles.

11.   Of the approximately twenty vehicles used by the Parks and Recreation Department, only two vehicles required a Nevada Class "B" Commercial Drivers' License ("CDL") -- the dump truck and another vehicle that was used seasonally for three months out of the year.

12.   As a result of his permanent vision impairment, Mr. Dixon was ineligible for a CDL and not licensed to drive the City's dump truck and one other seasonally used vehicle.

13.   In June of 2002, when the City renamed the Supervising Maintenance Worker position to a Crew Leader position, it added a requirement that all Crew Leaders obtain a CDL for the operation of certain vehicles.

14.   The CDL's physical qualifications require drivers to have at least 20/40 acuity in each eye, with or without correction.  49 C.F.R. § 391.41(b)(10).

15.   Crew Leaders typically assign driving duties to Crew Members, almost all of whom had a CDL.  At all relevant times, the Parks and Recreation Department had a sufficient number of Crew Members who possessed a CDL and who were able to drive the vehicles requiring a CDL.

Mr. Dixon's Reasonable Accommodation: 2002-2010

16.   In 2002, in response to the City's new CDL requirement, Mr. Dixon sought a reasonable accommodation.

17.   In May 2002, Mr. Dixon provided the Parks Services Manager, Mr Brown, with documentation from his optometrist detailing his visual disability.  Specifically, by letter dated May 1, 2002, Mr. Dixon's optometrist stated that Mr. Dixon had an old injury to his left eye that resulted in uncorrectable and permanent damage.  The optometrist further stated that Mr. Dixon's uncorrected visual acuity in his left eye was 20/1000, and his best corrected acuity in that eye was 20/400.  Because Mr. Dixon has normal vision in his right eye, his optometrist stated that his brain essentially does not use the left eye.  The letter further stated that Mr.

Dixon's vision had been this way for many years, and that it should not restrict his job or movements.

18.    In a memo dated June 19, 2002, Mr. Brown recommended to the Director of Personnel that Mr. Dixon be exempt from the requirement to obtain a CDL.  In the memo, Mr. Brown noted that the results of Mr. Dixon's required physical examination precluded him from testing for a CDL Learner's Permit, and that Mr. Dixon had provided a supporting letter from his optometrist.  He recommended that Mr. Dixon only be required to hold the standard driver's license that was required of him at the time of his promotion to Supervising Maintenance Worker.

19.    The Human Resources Department granted the accommodation in 2002.  After the exemption was approved, Mr. Brown met with Mr. Dixon and his two direct Supervisors, and informed them that Mr. Dixon was exempted from the CDL requirement as a result of his disability.

20.    For the next eight years, Mr. Dixon performed his job as Crew Leader with the accommodation of a CDL exemption successfully and without incident.

21.    Mr. Brown, the Parks Services Manager who recommended Mr. Dixon's accommodation, retired in or around early 2010 and was replaced by a new manager, Nancy O'Connor.

<u>Mr. Dixon's Reasonable Accommodation Is Revoked in 2010</u>

22.    On April 22, 2010, the City began a process to ensure that all City employees held the required certifications for their respective positions.  In the Parks Department, this process was carried out by the new Parks Services Manager, Nancy O'Connor.

23.    On April 26, 2010, Nancy O'Connor sent Mr. Dixon an interoffice memorandum stating

that he was required to obtain a CDL for his position as a Crew Leader, and warning that if he

did not obtain a CDL within thirty days, he would face disciplinary action.

24.    On April 26, 2010, Mr. Dixon informed Ms. O'Connor that he had been exempted from

the CDL since 2002 because of his vision impairment.  He also voluntarily sought reexamination

by his optometrist that day and obtained a second letter documenting his disability, which he

provided to her.  The letter reiterated that Mr. Dixon's visual impairment was uncorrectable and

permanent, that his visual acuity had not and would not improve, and that Mr. Dixon essentially

only used his right eye.  The optometrist emphasized once again that Mr. Dixon had always been

able to perform his job successfully with his disability, and should not be restricted in his job

performance.

25.    On April 28, 2010, Ms. O'Connor sent a second memo to Mr. Dixon stating that no

evidence to support the continuation of the exemption existed.  She also reiterated the May 26

deadline for obtaining the CDL, effectively revoking the accommodation that Mr. Dixon had

received for eight years.  She also warned Mr. Dixon that she would be monitoring his progress

toward obtaining a CDL on a weekly basis.

26.    On April 28 and April 29, 2010, both Parks Supervisors who had been present when

Mr. Dixon was exempted from the CDL requirement in 2002 sent separate emails to Ms.

O'Conner confirming that Mr. Dixon did in fact have a documented disability and that he had

been granted an exemption from the CDL requirement.

27.    Ms. O'Connor did not at any time reverse her position or withdraw her threat of

disciplinary action.

28.   According to the Parks Supervisor, disciplinary action for failure to obtain a CDL could culminate in termination.

29.   As a result of the Ms. O'Connor's threats, Mr. Dixon feared that he would be terminated for his inability to obtain a CDL and feared that he would lose his pension.  Thus, because he felt compelled by the City to do so, he retired from employment with the City on May 3, 2010, and paid out of pocket into the City's retirement plan for his last year of employment at a cost of $28,299.

30.   Mr. Dixon has suffered and experienced emotional distress and monetary loss as a direct result of Defendant's discrimination.

31.   Pursuant to 42 U.S.C. § 2000e-5, incorporated by reference in 42 U.S.C. § 12117(a), the EEOC investigated Mr. Dixon's charge and found reasonable cause to believe that the Defendant discriminated against him.  After unsuccessfully attempting to reach a voluntary resolution of the charge, the EEOC referred the matter to the United States Department of Justice.

Cause of Action

32.   The allegations of the foregoing paragraphs are incorporated herein by reference.

33.   Defendant's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of the ADA, 42 U.S.C. § 12111 *et seq.*, and its implementing regulation, 29 C.F.R. § 1630, in the following ways:

   a.   By failing to provide a reasonable accommodation (the CDL exemption) to the known physical disability of Mr. Dixon, who was an otherwise qualified employee, when the accommodation would not impose an undue hardship on the operation of Defendant's business.  42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.

b. By constructively discharging Mr. Dixon when Defendant revoked his
accommodation and threatened him with disciplinary action, causing him to
reasonably fear termination and loss of pension. 42 U.S.C. §§ 12112(a),
(b)(5)(B); 29 C.F.R. §§ 1630.4, 1630.9.

Prayer for Relief

WHEREFORE, Plaintiff, United States, prays that the Court grant the following relief:

(a)     Grant judgment in favor of the United States and declare that Defendant has
violated Title I of the ADA, 42 U.S.C. §§ 12111 *et seq.*, and its accompanying regulation;

(b)     Enjoin the Defendant from discriminating against qualified individuals with
disabilities in all aspects of employment including, but not limited to, failing or refusing to make
reasonable accommodations to qualified disabled applicants or employees, unless the Defendant
can demonstrate that the accommodation would impose an undue hardship;

(c)     Provide remedial relief sufficient to make whole the charging party, Mr. Joseph
Dixon, for the loss he has suffered as a result of the discrimination against him, including
granting him monetary compensation for his out of pocket costs and for the pain and suffering
caused by the Defendant's discriminatory conduct pursuant to and within the statutory
limitations of 42 U.S.C. § 1991a;

(d)     Require Defendant to modify its policies, practices, and procedures as necessary
to bring its employment practices into compliance with Title I of the ADA and its accompanying
regulations;

(e)     Order Defendant to train all managers and Human Resources staff as to the
requirements of the ADA including, but not limited to, the obligation to provide reasonable

accommodations to employees with disabilities; and

     (f)    Award such other additional relief as justice may require.


<u>Jury Demand</u>


    Plaintiff United States demands a trial by jury.


Respectfully submitted this __25__ day of __September__, 2014.


                    FOR THE UNITED STATES:

                    MOLLY J. MORAN
                    Acting Assistant Attorney General
                    EVE L. HILL
                    Deputy Assistant Attorney General
                    Civil Rights Division


                    REBECCA B. BOND, Chief
                    KATHLEEN P. WOLFE, Special Litigation Counsel
                    AMANDA MAISELS, Acting Deputy Chief
                    Disability Rights Section
                    Civil Rights Division


                    ALYSE BASS
                    Senior Trial Attorney
                    Disability Rights Section
                    Civil Rights Division
                    U.S. Department of Justice
                    950 Pennsylvania Avenue NW - NYA
                    Washington, D.C.  20530
                    Telephone:  (202) 307-0663
                    Facsimile: (202) 305-9775
                    Email:  alyse.bass@usdoj.gov